## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Danielle M. A-C.                                   Case No. 22-cv-2151 (TNL)

      Plaintiff,

v.                                                                **ORDER**

Martin J. O'Malley[1],
Commissioner of Social Security
Administration,

      Defendant.

---

Edward C. Olson, Reitan Law Office, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402 and Kylee D. Miller, Tuite Law, 1111 South Alpine Road, Suite 400, Rockford, IL 61101 (for Plaintiff); and

Ana H. Voss, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; Chris Carillo, James D. Sides, Melissa K. Curry, and Sophie Doroba, Social Security Administration, Office of Program Litigation, Office 4, 6401 Security Boulevard, Baltimore, MD 21235 (for Defendant).

---

## I. INTRODUCTION

Plaintiff Danielle M. A-C. challenges Defendant Commissioner of Social Security's denial of her applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, and supplemental security income under Title XVI of the same, 42 U.S.C. § 1381. The parties have consented to a final judgment from the

---

[1] Martin O'Malley is currently serving as the Commissioner of Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

Pursuant to the Federal Rules of Civil Procedure's Supplemental Rules governing actions seeking judicial review of the Commissioner's decision, this action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Rather than filing a brief as provided in amended Rule 5, Plaintiff filed a Motion for Summary Judgment, ECF No. 21, which was the procedure prior to the recent amendment to Rule 5. Defendant filed a brief requesting the Commissioner's decision be affirmed, *see* ECF No. 25.

For the reasons set forth below, the Court denies Plaintiff's motion, grants Defendant's request for relief, and affirms the Commissioner's decision.

## II. PROCEDURAL HISTORY

In her applications for disability insurance benefits and supplemental security income, Plaintiff asserted that she has been disabled since June 23, 2013, due to fibromyalgia, social phobia, post-traumatic stress disorder, general anxiety, depression, chronic fatigue, plantar fasciitis, extreme pain/swelling, extremity numbness, upper extremity pain, malaise, and hyperlipidemia. Tr. 197-209, 264, ECF No. 15. Plaintiff's applications were denied initially and again upon reconsideration. Tr. 73-104.

Plaintiff requested a hearing before an administrative law judge ("ALJ"), Tr. 107-108, and a hearing was held in September 2017 after which the ALJ issued an unfavorable decision to Plaintiff in that same month. Tr. 10-72. The Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then appealed to the Northern District of Illinois which resulted in a remand following from the Commissioner's voluntary motion to remand. Tr.

1014-26. The Appeals Council then vacated the ALJ's September 2017 decision and remanded the case to an ALJ for resolution on several issues. Tr. 1029-32. A hearing was held before a new ALJ in January 2020, Tr. 933-77, and that ALJ issued an unfavorable decision in February 2020. Tr. 905-24.

Plaintiff then submitted to the Appeals Council written exceptions in support of her request for review of the ALJ's February 2020 decision. Tr. 1129-36. The Appeals Council declined to assume jurisdiction. Tr. 891-94. As a result, the ALJ's February 2020 decision became the final decision of the Commissioner subject to judicial review. *See* 42 U.S.C. § 405(g). Plaintiff now seeks review by this Court.

### III.  ALJ's DECISION

The ALJ found that Plaintiff satisfied the insured status requirements of the Social Security Act through June 30, 2016 and has not engaged in substantial gainful activity since the alleged onset date of June 23, 2013. Tr. 907-08. The ALJ further found that Plaintiff has the following severe impairments: fibromyalgia; obesity; degenerative disc disease of the cervical spine; depressive disorder; posttraumatic stress disorder; obsessive-compulsive disorder; anxiety disorder with social phobia; and polysubstance abuse disorder. Tr. 908. The ALJ next concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 909.

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work, except that Plaintiff cannot climb ladders, ropes or scaffolds; but can occasionally climb ramps and stairs; occasionally

balance, stoop, kneel, crouch and crawl; perform simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work); make simple work-related decisions; and interact occasionally with supervisors, coworkers and the public. Tr. 912. The ALJ next determined that Plaintiff is not able to perform any past relevant work, Tr. 922, but can perform other jobs in the national economy that exist in significant numbers. Tr. 923. Accordingly, the ALJ found that Plaintiff was not disabled from June 23, 2013 through the date of the ALJ's February 2020 decision. Tr. 924.

## IV.  ANALYSIS

### A. Legal Standards

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant demonstrates that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted).  Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091.

### B. Appeal Council's Remand Order

Plaintiff first argues that the ALJ's February 2020 decision did not comply with the Appeals Council's remand order. *See* Pl.'s Mem. in Supp. at 5-11, ECF No. 22. While the Eighth Circuit has not addressed this issue, courts in this district and other district courts in this Circuit have all concluded that the question of whether an ALJ complied with the Appeals Council's instructions in a remand order is not subject to judicial review. *See Jason M. G. v. O'Malley*, No. 23-cv-84 (JFD), 2024 WL 1095915, at *5 (D. Minn. Mar. 13, 2024) ("Title 42 U.S.C. § 405(g) authorizes judicial review only to determine whether substantial evidence supports the Commissioner's factual findings and whether the ALJ committed an error of law."); *Vanepps v. Comm'r of Soc. Sec.*, No. C18-5-LTS, 2019 WL 1239857, at *7 (N.D. Iowa Mar. 18, 2019) ("Because 42 U.S.C. § 405(g) authorizes judicial

review solely to determine whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards, the question of whether the ALJ complied with the Appeals Council's remand order is not subject to judicial review."); *King v. Berryhill*, No. 5:16-CV-00079 (SWW/JTR), 2017 WL 1095087, at *2 (E.D. Ark. Feb. 24, 2017) (concluding that an ALJ's failure to comply with the Appeals Council's remand order was "an internal agency issue that became moot when the Appeals Council later *declined* to review the ALJ's . . . decision"), *report and recommendation adopted*, 2017 WL 1100432 (E.D. Ark. Mar. 22, 2017); *Sanders v. Astrue*, No. 4:11-CV-1735 RWS (TIA), 2013 WL 1282330, at *11 (E.D. Mo. Feb. 8, 2013) ("The issue [of] whether an ALJ complied with a remand order evaporates when the Appeals Council adopts the ALJ's decision as the Commissioner's final decision; with that action, the Appeals Council implicitly acknowledges that the ALJ's decision is compliant with the remand order."), *report and recommendation adopted*, 2013 WL 1281998 (E.D. Mo. Mar. 27, 2013). The Court agrees with these persuasive and instructive decisions.

In addition, Plaintiff already raised her non-compliance argument before the Appeals Council, *see* Tr. 1134-36, and the Appeals Council found no issues and no reason to assume jurisdiction after considering Plaintiff's argument that the ALJ failed to follow the Appeals Council's instructions in its remand order. *See* Tr. 891-93. Thus, assuming arguendo, the Appeals Council has already addressed this issue and determined that the ALJ "adequately evaluated the evidence of record." Tr. 892. Therefore, the only issue up for judicial review pursuant to 42 U.S.C. § 405(g) is whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal

standards. *See Jason M. G.*, 2024 WL 1095915, at *5; *Vanepps*, 2019 WL 1239857, at *7. Plaintiff's argument that the ALJ improperly modified the residual functional capacity determination made by the prior ALJ in its September 2017 decision also fails as the Appeals Council vacated that prior decision, *see* Tr. 1029, meaning that the ALJ's September 2017 decision no longer has any force or effect. *See United States v. Maxwell*, 590 F.3d 585, 589 (8th Cir. 2010).

### C. Plaintiff's Mental Residual Functional Capacity

Plaintiff challenges the ALJ's residual functional capacity determination relating to mental limitations associated with interacting and relating with others as well as concentration, persistence, or maintaining pace, and failing to cite to the record at times. *See* Pl.'s Mem. in Supp. at 6-8.

A claimant's "residual functional capacity is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1); *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's [residual functional capacity] represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence."); *see also Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022). "Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks*, 687 F.3d at 1092 (quotation omitted).

At the same time, the residual-functional-capacity determination "is a decision reserved to the agency such that it is neither delegated to medical professionals nor

determined exclusively based on the contents of medical records." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c). "An ALJ determines a claimant's [residual functional capacity] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted). As such, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion." S*chmitt*, 27 F.4th at 1360. Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* Accordingly, "[e]ven though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092; *see* 20 C.F.R. §§ 404.1546(c), 416.946(c). Plaintiff bears the burden to establish her residual functional capacity. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

The ALJ determined that Plaintiff has the mental residual functional capacity to "perform simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work); make simple work-related decisions; and interact occasionally with supervisors, coworkers and the public." Tr. 912. The ALJ cited to ample evidence in support of Plaintiff's mental residual functional capacity. *See* Tr. 912-14, 917-20. The ALJ found that there was no evidence in the record relating to treatment for reported mental health issues until January 2015 when she began counseling, *see* Tr. 917 (citing Tr. 413), and was subsequently diagnosed with major depressive disorder, posttraumatic stress disorder and panic disorder, although psychiatric mental status examinations showed no

evidence of psychosis or cognitive defects. *See* Tr. 917 (citing 415-16, 420, 639, 647, 669).

Plaintiff discontinued her counseling sessions after April 2016 but began mental health

treatment again towards the end of 2016. Tr. 917-18 (citing Tr. 700). The ALJ further

considered Plaintiff's reports of worsening depression and anxiety due to her discontinued

use of her psychiatric medication because of financial constraints. *See* Tr. 918[2] (citing Tr.

700). The ALJ also considered Plaintiff's discharge from mental health services in July

2017 after she stopped attending sessions and reported that her mood had improved, among

other things. Tr. 918 (citing Tr. 677[3]). The ALJ, however, noted that Plaintiff initiated

treatment the following month. Tr. 918 (citing Tr. 1457). The ALJ also relied on and cited

to additional medical evidence relating to Plaintiff's mental impairments and limitations

from 2018 through 2019. Tr. 918-19; *see, e.g.*, Tr. 1639 (mental health assessment report

from October 2018 diagnosing Plaintiff with major depressive disorder and polysubstance

abuse following Plaintiff's admission to inpatient care due to increasing depressive

symptoms); Tr. 1650-53 (psychiatric evaluation from June 2019 finding Plaintiff to have a

coherent thought process; good insight and judgment; average fund of knowledge; intact

attention, concentration, memory, and associations; mood reported as "okay"; and affect

found to be depressed, anxious, and at times tearful); Tr. 1653 (diagnosing Plaintiff with

---

[2] Contrary to Plaintiff's assertion, *see* Pl.'s Mem. in Supp. at 9, the ALJ adequately considered Plaintiff's reports of inability to afford treatment. *See e.g.*, Tr. 916 (the ALJ reasoning that "[e]ven though [Plaintiff] might not have been able to afford treatment during these long gaps without treatment, when she has returned to treatment, the objective medical findings have been disproportionate to her subjective report of symptoms"). The ALJ complied with the regulations. *See* 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2).

[3] Plaintiff takes issue with this note because a clerical error shows two dates: one in 2010 and one in 2017. *See* Pl.'s Mem. in Supp. at 6-7; *see also* Pl.'s Reply at 3, ECF No. 28. A review of the record shows that the 2010 date was a clerical error, but nevertheless even if the note was from 2010 there is still substantial evidence in the record as a whole to support the ALJ's determination.

major depressive disorder, post-traumatic stress disorder, social anxiety disorder by history

following psychiatric evaluation in June 2019); Tr. 1659-61 (initial psychiatric evaluation

from December 2019 describing Plaintiff's appearance as fair; behavior as cooperative;

speech and volume as normal; mood as neutral and slightly depressed; affect as congruent

with mood; thought process as linear, goal directed; memory, cognition, judgment, and

insight as intact); Tr. 1661 (finding Plaintiff's symptoms satisfied the criteria for anxiety

due to unspecified and major depressive disorder, moderate without psychotic symptoms);

Tr. 1757 (clinical note from November 2019 noting improved mood with medication).

   In addition, the ALJ also considered Plaintiff's own reports and testimony[4]. For

example, the ALJ considered Plaintiff's reports from June 2015 that she is able to get along

with others, shop, attend religious gatherings, drives her children to school[5], prepares meals

for her family, reads, manages funds, and uses the internet. *See* Tr. 911 (citing Tr. 273-80,

284). The ALJ also considered Plaintiff's testimony concerning her participation in support

groups in 2016 with two or three people once a week, which she reported to be helpful. Tr.

911, 913[6]; *see e.g.*, Tr. 951-52. Plaintiff also testified that she generally gets along with

---

[4] Plaintiff argues that the ALJ failed to make a credibility finding, *see* Pl.'s Mem. in Supp. at 8, the ALJ however was not required to make such a finding. *See* SSR 16-3p, 2017 WL 5180304. Rather the ALJ evaluates Plaintiff's statements regarding her symptoms according to 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ complied with the regulations.

[5] Plaintiff disputes her driving ability. *See* Pl.'s Mem. in Supp. at 8-9. The record, however, reflects Plaintiff's own reported driving routine which includes driving her children to and from school every day as well as to sporting activities. *Compare* Pl.'s Mem. in Supp. at 8, *with* Tr. 274, 276, 284, 949-50. Plaintiff also testified that on an average day she is able to drive between two towns which is "about 15 miles each way." Tr. 949.

[6] Plaintiff takes issue with the lack of citations to Plaintiff's testimony. *See* Pl.'s Mem. in Supp. at 8. The ALJ explicitly referenced Plaintiff's testimony in his decision, *see* Tr. 911, 913, 919, and a lack of citation in this circumstance is not enough to warrant remand especially where, as here, the alleged deficiencies had no bearing on the outcome of this case. *See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) ("[A]n arguable deficiency in opinion-writing technique does not require [the Court] to set aside an administrative finding when that deficiency had no bearing on the outcome." (quotation omitted)).

supervisors but mostly experiences anxiety in crowds the size of 10 to 15 people. *See* Tr. 911, 913, 919; *see e.g.*, Tr. 938-39, 943-44. The ALJ also considered the medical evidence which showed that Plaintiff had a good rapport with her providers as she was described as pleasant and cooperative. *See* Tr. 911. Plaintiff's alleged "brain fog" was also considered. *See* Tr. 913, 919; *see e.g.*, Tr. 941-42.

After considering the above, among other evidence in the record, the ALJ explained that Plaintiff's mental status examinations generally showed "intact cognition with no significant deficits in intelligence, attention, concentration, or memory." Tr. 919. The ALJ acknowledged "inconsistent reports of hallucinatory experiences and paranoia with [Plaintiff] recently denying such psychotic symptoms." Tr. 919. And concluded that Plaintiff's "depression and anxiety, and symptoms of fibro-fog . . . support the limitation to simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work), and the ability to make no more than simple work-related decisions." Tr. 919. Further determining that "[b]ecause of [Plaintiff's] social anxiety and history of PTSD symptoms, the [ALJ] has further limited her to occasional interactions with supervisors, coworkers and the public." Tr. 919. The Court concludes that the ALJ provided ample explanation for Plaintiff's above mental residual functional capacity determination and further concludes that Plaintiff's arguments are without merit. There is no evidence that the ALJ failed to consider or ignored evidence in the record as Plaintiff argues, *see generally* Pl.'s Mem. in Supp.[7]; Pl.'s Reply. Plaintiff's arguments boil down to a

---

[7] It is worth noting that Plaintiff misstates the record at times. For example, Plaintiff claims that the ALJ "specifically asked [Plaintiff] to limit and focus her testimony only on the time period prior to her date last insured, generating testimony to 2016 and earlier." *See* Pl.'s Mem. in Supp. at 8. A review of the record shows that the ALJ asked Plaintiff

disagreement in opinion writing which is not enough to warrant remand. *See Senne v. Apfel*, 198 F.3d 1065, 1067-68 (8th Cir. 1999) (rejecting the argument that deficiency in the ALJ's opinion writing alone warrants remand, but finding remand appropriate when the ALJ's findings were not sufficient to ascertain whether the ALJ's decision was supported by substantial evidence on the record); *see also Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987) (finding harmless error where "the deficiency probably had no practical effect on the outcome of the case"). It follows that Plaintiff's arguments relating to the *Chenery* Doctrine fail to hold any weight. *See* Pl.'s Reply at 3-5.

## D. Non-Severe Carpal Tunnel Impairment

Plaintiff also challenges the ALJ's determination that Plaintiff's carpal tunnel impairment is non-severe. *See* Pl.'s Mem. in Supp. at 11-13. "[A]n impairment is severe only if it significantly limits Plaintiff's ability to work and lasts, or is expected to last, for at least 12 consecutive months." *Jessica R. H. v. O'Malley*, No. 22-cv-3091 (DLM), 2024 WL 965239, at *3 (D. Minn. Mar. 6, 2024) (citing 42 U.S.C. § 423(d)(1)(A)). Substantial evidence supports the ALJ's finding that Plaintiff's carpal tunnel syndrome did not significantly limit her hand function over a consecutive 12-month period and therefore is not severe because there is no objective evidence of Plaintiff's carpal tunnel syndrome until November 2015 and symptoms resolved after Plaintiff's second release procedure in April 2016. *See* Tr. 908-09.

---

at the hearing "to be mindful when . . . going through testimony to separate out limitations that are current versus prior to the date last insured . . . to make sure that we're clear in testimony whether any limitations that you're referring to applied also prior to your date last insured." Tr. 950.

The medical evidence in the record shows impression notes from a clinical visit in spring of 2014 listing carpal tunnel syndrome based on Plaintiff's subjective symptoms, *see* Tr. 908 (citing Tr. 373). No definitive evidence of carpal tunnel syndrome, however, was found in 2014, Tr. 908 (citing Tr. 374, 398), until November 24, 2015. Tr. 908; *see e.g.*, Tr. 857 (examination results showing mild symmetric bilateral carpal tunnel syndrome). The ALJ also considered the clinical examination in March 2016 which showed positive results, *see* Tr. 573, which led to Plaintiff undergoing a right carpal tunnel release procedure in that same month, *see* Tr. 568, and a left carpal tunnel release procedure in April 2016, *see* Tr. 819. A postoperative clinical note from April 26, 2016, noted Plaintiff's reports of improvements and denial of any symptoms. Tr. 908 (citing Tr. 1450). And an x-ray of Plaintiff's hand from May 2019 showed possible mild soft tissue swelling without significant osseous abnormality of the left hand and no abnormality of the right hand. Tr. 908 (citing Tr. 1364-65). Thus, the record reflects that Plaintiff's carpal tunnel syndrome did not significantly limit her hand function over a consecutive 12-month period and therefore substantial evidence supports the ALJ's determination that Plaintiff's carpal tunnel syndrome is not severe.

Moreover, the ALJ acknowledged Plaintiff's hearing testimony regarding issues with joint pain and swelling in her hands, but the ALJ properly concluded that "there is no further evidence of treatment related to carpal tunnel syndrome after that second release [procedure], suggesting that the procedures were effective in relieving her hand symptoms." Tr. 908. Plaintiff's hearing testimony concerning her subjective complaints are not enough to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). "There

must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* The Court concludes that the ALJ properly considered Plaintiff's testimony.

### E.  Hypothetical Question to Vocational Expert

Plaintiff also argues that the ALJ failed to account for Plaintiff's carpal tunnel syndrome and walking limitation in the hypothetical question to the vocational expert. *See* Pl.'s Mem. in Supp. at 10. The ALJ, however, is not required to offer a corresponding residual functional capacity limitation and hypothetical question for a limitation that is not substantially supported by the evidence in the record as a whole, as is the case here. *See Lacroix v. Barnhart*, 465 F.3d 881, 888-89 (8th Cir. 2016); *Flint v. Colvin*, No. 13-cv-1220 (PAM/SER), 2014 WL 2818665, at *27 (D. Minn. June 23, 2014). Because the Court has already concluded that no further limitations for Plaintiff's carpal tunnel syndrome is supported by the record, the ALJ did not need to include any corresponding limitation in Plaintiff's residual functional capacity determination or in the hypothetical question to the vocational expert.

And when determining Plaintiff's residual functional capacity, the ALJ was not required to adopt testing results from a functional capacity evaluation conducted by a physical therapist in November 2019. *See* Tr. 1723 (finding Plaintiff's six-minute walking test limited because results showed Plaintiff was only able to ambulate for two minutes out of the six minutes and during those six minutes Plaintiff ambulated 100 total feet). "Because a claimant's [residual functional capacity] is a medical question, an ALJ's

assessment of it must be supported by some medical evidence of a claimant's ability to function in the workplace. However, there is no requirement that a[] [residual functional capacity] finding be supported by a specific medical opinion." *Schmitt*, 27 F.4th at 1360 (quotation omitted). The ALJ must consider all the evidence. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("It is the ALJ's responsibility to determine a claimant's [residual functional capacity] based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of h[er] limitations.").

The ALJ considered Plaintiff's November 2019 six-minute walking test results as well as Plaintiff's demonstrated ability to function at a sedentary physical demand level, *see* Tr. 916 (citing Tr. 1723), and further considered follow up clinical notes from later that same month which noted pain with palpation of the entire neck and back, and generalized swelling of the hand, but no other abnormal findings other than Plaintiff's obesity. *See* Tr. 916 (citing 1755-57). The ALJ ultimately concluded that the objective evidence "does not provide any support for gait dysfunction, lower extremity weakness or instability." *See* Tr. 917. But after considering Plaintiff's "consistent pain complaints" the ALJ limited Plaintiff to sedentary work. *See* Tr. 912, 917. The ALJ adequately determined that additional limitations beyond the limitations accounted for in Plaintiff's residual functional capacity and subsequent hypothetical question were not warranted. *See Cynthia D. v. Kijakazi*, No. 20-cv-1886 (BRT), 2022 WL 1715187, at *5 (D. Minn. Jan. 3, 2022) ("For a hypothetical to be proper at step five, it would need to present the limitations described from a supported [residual functional capacity].").

16

By pointing to evidence in the record to support its argument for an additional limitation related to walking, Plaintiff is essentially asking this Court to reweigh the evidence. It is well established that this Court cannot reweigh the evidence as part of its review. *See Schmitt*, 27 F. 4th at 1361 ("Despite [the claimant's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence."); *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.").

Contrary to Plaintiff's argument, the job of ampoule sealer did not conflict with Plaintiff's residual functional capacity of occasional interactions. *See* Pl.'s Mem. in Supp. at 10. In response to a hypothetical question, the vocational expert testified that neither the identified job of ampoule sealer nor an automated job requiring use of more technology would require Plaintiff to work in concert with others at a production pace. *See* Tr. 969-71, 973-75. Rather, the vocational expert stated that the ampoule sealer position would require someone to work "in combination with others who are doing the exact same thing as you . . . but it's not going to be in terms of working in concert with others" and you do not have to keep up with the machine like with an assembly line. Tr. 974-75. This testimony does not conflict with Plaintiff's residual functional capacity to "perform simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work); make simple work-related decisions; and interact occasionally with supervisors, coworkers and the public." Tr. 912. See *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996) ("A hypothetical question must precisely describe a claimant's impairments so that the

vocational expert may accurately assess whether jobs exist for the claimant."); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("Testimony from a vocational expert based on a properly-phrase hypothetical constitutes substantial evidence.").

In sum, substantial evidence on the record as a whole supports the ALJ's residual functional capacity determination and the corresponding hypothetical question.

### F. Weighing of Opinion Evidence

Plaintiff's last argument concerns the ALJ's weighing of opinion evidence. Plaintiff argues that the ALJ did not comply with the "treating physician rule" because the ALJ did not assign controlling weight to any medical opinion. *See* Pl.'s Mem. in Supp. at 13-15.

Plaintiff's claims were filed prior to the March 2017 regulation change concerning the evaluation of medical opinions and therefore, the previous regulation for evaluating medical opinions applies in this matter. "A treating physician's opinion is entitled to controlling weight when it is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). "Yet[, this controlling] weight is neither inherent nor automatic and does not obviate the need to evaluate the record as a whole." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (citation and quotation omitted). The opinions of treating physicians "are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *see Cline*, 771 F.3d at 1103 (permitting the opinions of treating physicians to be discounted or disregarded "where other medical assessments are supported by better or more thorough medical evidence, or

where a treating physician renders inconsistent opinions that undermine the credibility of such opinions" (quotation omitted)). If a treating physician's opinion is not given controlling weight, then "the opinion is weighed based on a number of factors, including the examining relationship, treatment relationship, opinion's supportability, opinion's consistency with the record as a whole, specialization of the provider, and any other factors tending to support or contradict the opinion." *Patrick M. B. v. Saul*, No. 18-cv-2569 (TNL), 2020 WL 1515380, at *3 (D. Minn. Mar. 30, 2020) (citing 20 C.F.R. § 416.927(c); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003)). The above factors also apply to the opinions of consultative examiners. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (factors apply in deciding weight "give[n] to any medical opinion").

Not only is Plaintiff's argument underdeveloped as she only generally argues that the ALJ did not comply with the "treating physician rule" but she also identifies only briefly Advanced Practice Nurse Felgenhauer's opinion as not being evaluated properly. *See* Pl.'s Mem. in Supp. at 13. Under the prior regulation for evaluating medical opinions, however, Nurse Felgenhauer is not considered an "acceptable medical source" permitted to offer a "medical opinion." *See* 20 C.F.R. § 404.1502(a)(7) (defining "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (*only with respect to claims filed* (*see* § 404.614) *on or after March 27, 2017*") (emphasis added); *accord* 20 C.F.R. § 416.902(a)(7). Thus, Plaintiff's argument with respect to the ALJ's evaluation of opinions offered by "other sources" (i.e., Nurse Felgenhauer) fails.

The ALJ did what was required, which is to consider all relevant evidence and generally explain the weight given to opinions from other sources. *See* SSR 06-03P, 2006 WL 2329939, at *6. "Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." *Id.* at 5. The ALJ properly considered Nurse Felgenhauer's opinion which consisted of statements in the form of checked boxes, *see* Tr. 880-89, and properly afforded such opinion little weight because Nurse Felgenhauer's assessed limitations were inconsistent with her own reported findings and other substantial evidence in the record. *See* Tr. 920. For example, the ALJ explained that he gave little weight to Nurse Felgenhauer's "assessment as to [Plaintiff's] impairment-related absences, need for unscheduled breaks and time off-task are simply not consistent with any of the objective medical findings or record or [Plaintiff's] reported activities of daily living." Tr. 920. Even if Nurse Felgenhauer is an acceptable medical source, the ALJ still did not err in his evaluation because the ALJ gave "good reasons" for assigning less than controlling weight to Nurse Felgenhauer's opinion. *See Chesser v. Berryhill*, 858 F.3d 1161, 1164-66 (8th Cir. 2017).

Nurse Felgenhauer's opinion is also made up of checked boxes which are typically given little weight. *See Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (finding "[t]he opinion's bare, formulaic conclusion presumptively warranted little evidentiary weight because it was rendered on a check-box and fill-in-the-blank form" (quotation omitted)); *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (finding assessments to have "little evidentiary value" when they "consist of nothing more than vague, conclusory

statements—checked boxes, circled answers, and brief fill-in-the-blank responses," and when they "cite no medical evidence and provide little to no elaboration"). In sum, the ALJ appropriately weighted Nurse Felgenhauer's opinion along with the other evidence in the record.

In addition, and contrary to Plaintiff's assertions, the ALJ was not required to rely on a particular treating physician's opinion, *see Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." (quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)), and the ALJ is not required to explicitly address each factor when evaluating opinion evidence. *Roesler v. Colvin*, No. 12-cv-1982 (JRT/JJK), 2013 WL 4519388, at *5, n. 5 (D. Minn. Aug. 26, 2013) ("[T]he regulations do not strictly require the ALJ to explicitly discuss each factor [under 20 C.F.R. §§ 404.1527(c), 416.927(c)].").

## V. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record as a whole, the Court affirms the ALJ's February 2020 decision. Based upon the record, memoranda, and proceedings herein, and for the reasons states above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgement, ECF No. 21, is **DENIED**.

2. Defendant's request for relief, ECF No. 25, is **GRANTED**.

3. The Commissioner's decision is **AFFIRMED.**

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: September 24, 2024           _s/ Tony N. Leung_
                                     Tony N. Leung
                                     United States Magistrate Judge
                                     District of Minnesota

                                     *Danielle M. A-C. v. O'Malley*,
                                     Case No. 22-cv-2151 (TNL)